**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTINA SCERANKA,** | : | **Civil No.  1:19-CV-1953** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| v. | : | |
| | : | |
| **ANDREW M. SAUL** | : | |
| **Commissioner of Social Security[1]** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.     Introduction

Social Security appeals often entail the evaluation of competing medical opinions. In this setting, on occasion, the sufficiency of an Administrative Law Judge's (ALJ) evaluation of this medical opinion evidence is affected by when those opinions are rendered, the extent of the expert's treating relationship with the plaintiff, and the degree to which those opinions adequately address later-acquired medical information.

Typically, state agency experts provide opinions regarding disability claims at an early stage of the administrative process. There is nothing improper about this

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Commissioner of Social Security, Andrew Saul, is automatically substituted as the defendant in place of the former Acting Commissioner of Social Security. Fed. R. Civ. P. 25(d).

procedure; indeed, some threshold medical evaluation of a claim is both appropriate and necessary. However, when an ALJ gives great weight to an opinion proffered at the outset of the administrative process by a medical source who has never seen, examined, or treated the claimant without providing adequate consideration to subsequent, material intervening medical events, a remand may be necessary to ensure that sufficient and proper consideration was given to all of the medical evidence.

So it is in this case.

Christina Sceranka has applied for disability benefits, citing a constellation of physical impairments. Four medical experts have opined regarding the disabling nature of Sceranka's impairments. The two most recent opinions were provided by treating sources, both of whom concluded that Sceranka was disabled. A consulting, examining source who examined Sceranka shortly after she submitted this disability application also found that she was severely impaired. The only medical source who did not find that Sceranka suffered from severely disabling impairments was a non-examining state agency expert, who opined at the outset of this process, based solely upon a review of what are acknowledged to have been incomplete medical records, that Sceranka could perform light work

In denying this disability claim, the ALJ placed significant weight upon this early state agency opinion rendered by the only physician who never saw, met,

examined, or treated Sceranka. The ALJ afforded this opinion significant weight without directly or sufficiently addressing how the subsequent treatment and opinion evidence spanning nearly two years affected or undermined the weight to be given to this initial assessment.

In our view, more is needed here. Accordingly, for the reasons set forth below, we will direct that this case be remanded for further consideration by the Commissioner.

## II.    <u>Statement of Facts and of the Case</u>

On April 10, 2014, Sceranka applied for Supplemental Security Income pursuant to Title XVI of the Social Security Act, alleging an amended onset date of disability beginning April 10, 2014—the protective filing date. (Tr. 700). Sceranka alleged disability due to a cascading array of medical conditions, including diabetes, degenerative discs in lower back, asthma, arthritis, and gout. (Tr. 214). Sceranka was approximately 34 years old at the time of the alleged onset of her disability. (Tr. 48, 700). She had a high school education, where she attended special education classes, (Tr. 215), and also completed vocational training in cosmetology, graduating in spring 2004, (Tr. 726), but had no past relevant work experience. (Tr. 725-26).

The medical record demonstrates that throughout the relevant period, Sceranka experienced periods where she lacked health insurance. (Tr. 735-738). Thus, it is conceded that there is a paucity of medical evidence due to Sceranka's

lack of health insurance coverage, a factor which as a matter of law cannot be held against a claimant. The records that do exist, however, disclose that prior to her April 2014 onset date, Sceranka underwent multiple surgical repairs of the right knee and Achilles tendons and heels and one emergency department visit for left elbow and left knee pain. (Tr. 700, 707). Thereafter, Sceranka required left ulnar nerve transposition surgery in April 2014. (Tr. 707).

The medical record in this case also reflects four medical opinions, one from a non-examining course who reviewed Sceranka's medical records at the outset of this disability review; a second opinion from a consulting examining source, which was rendered at the same time as the non-examining source opinion but reached materially different results; and two subsequent treating source opinions. These four opinions recached differing conclusions regarding the degree of Sceranka's disability, with the doctor who never examined or treated Sceranka opining that she could perform light work, and the other sources who either examined or treated the plaintiff concluding that she suffered from a far greater degree of impairment. In fact, both of Sceranka's treating physicians opined that she was totally disabled.

On June 26, 2014, shortly after she filed her disability application, a state agency expert, Dr. Kurt Maas, conducted a medical record review in Sceranka's case. (Tr. 75-77). On the basis of this medical record review only, Dr. Maas opined that Sceranka was able to perform work at the light exertional level. (Tr.75-77).

Specifically, Dr. Maas concluded that Sceranka could occasionally lift and/or carry 20 pounds, could frequently lift and/or carry ten pounds, could stand and/or walk for approximately six hours in an eight-hour workday, could sit for approximately six hours in an eight-hour workday, and could push and pull without limitations. (Tr. 75). Dr. Maas further indicated that Sceranka could occasionally climb ramps and stairs, climb ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, and crawl. (Tr. 76). Lastly, Dr. Maas concluded that Sceranka should avoid concentrated exposure to extreme heat, extreme cold, humidity, vibration, fumes, odors, dusts, gases, poor ventilation, and workplace hazards. (Id.).

Contemporaneously, on June 17, 2014, Sceranka was seen by Dr. Justine Magurno, who conducted a consultative examination of the plaintiff. (Tr. 521-26). Based upon her direct examination of the plaintiff, Dr. Magurno concluded that Sceranka was significantly more impaired than Dr. Maas had found her to be from his scrutiny of her incomplete medical records. Dr. Magurno opined that Sceranka could continuously lift and carry ten pounds, but could never lift or carry anything greater than ten pounds. (Tr. 521). Dr. Magurno further concluded that Sceranka could sit for four hours in an eight-hour workday, stand for two hours in an eight-hour workday, and walk for one-hour total in an eight-hour workday, resting for the remaining period of time. (Tr. 522). Thus, the postural limitations found by Dr. Magurno would not permit Sceranka to sit, stand, or walk for a full 8-hour work day.

In terms of environmental limitations, Dr. Magurno opined that Sceranka could frequently operate a motor vehicle, continuously endure vibrations, but could never be exposed to unprotected heights, moving mechanical parts, humidity and wetness, dust, odors, fumes, and pulmonary irritants, and extreme cold and heat. (Tr. 525). Dr. Magurno further found that Sceranka could frequently stoop, but could never climb ladders or scaffolds and could never kneel, balance, crouch, or crawl. (Tr. 524). With regard to Sceranka's right hand, Dr. Magurno opined that Sceranka could continuously reach overhead and in all directions, and could occasionally handle, finger, feel and push and pull. (Tr. 523). With regard to Sceranka's left hand, Dr. Magurno opined that Sceranka could frequently reach overhead and in all directions, could frequently handle, finger and feel, and could occasionally push and pull and operate foot controls. (Tr. 523).

Dr. Magurno's June 17, 2014 opinion, which was based upon an actual examination of Sceranka, was rendered some nine days prior to the far less restrictive medical opinion authored by Dr. Maas on June 26, 2014 following his review of medical records only. Even though Dr. Magurno had actually seen and examined Sceranka, Dr. Maas gave this examining source opinion scant credence, noting only that he gave the contemporaneous findings of the doctor who actually examined the plaintiff "appropriate weight." (Tr. 77).

In July 2016, Sceranka was examined by a treating physician, Dr. Jose Nazar, an orthopedic surgeon, who opined that she suffered from significant disabling exertional limitations. (Tr. 672-77). Specifically, Dr. Nazar opined that Sceranka could occasionally lift and carry ten to 20 pounds, but could never lift or carry anything greater than 21 pounds. (Tr. 672). Dr. Nazar also stated that Sceranka could only sit, stand, and walk for one hour, but could sit for three hours in an eight-hour workday and could stand and walk for no more than two hours in an eight-hour workday. (Tr. 673). In Dr. Nazar's opinion, Sceranka needed an assistive device to effectively ambulate, specifically crutches, but was able to use her free hand to carry small objects. (Id.). With regard to Sceranka's right hand, Dr. Nazar concluded that Sceranka could frequently reach overhead and in all directions, could frequently finger, feel, and push and pull objects, and could occasionally handle objects. (Tr. 674). As for Sceranka's left hand, Dr. Nazar opined that Sceranka could frequently reach overhead and in all directions, could frequently handle, finger, feel, push and pull objects, and operate foot controls. (Id.). In terms of her postural limitations, Dr. Nazar opined that Sceranka could occasionally climb stairs and ramps, could occasionally balance, and could never climb ladders or scaffolds and could never stoop, kneel, crouch, or crawl. (Tr. 675). With regard to her environmental limitations, Dr. Nazar opined that Sceranka could occasionally move mechanical

parts, operate a motor vehicle, be exposed to humidity and wetness, and could occasionally tolerate exposure to extreme cold, and extreme heat. (Tr. 676).

In September 2016, a second treating source, Dr. Warren DeWitt, examined Sceranka and reported that her impairments were disabling. (Tr. 935). Dr. DeWitt opined that Sceranka would be off task for more than 33 percent of the day. (Tr. 933). Additionally, Dr. DeWitt opined that Sceranka could sit for only approximately two to three hours in an eight-hour workday, but would need to change positions every 20 minutes; she could stand and walk for approximately 30 minutes in an eight-hour workday; she needed an assistive device to effectively ambulate, specifically a cane; could not stoop or bend during the day; and would be absent from work for more than four days per month. (Tr. 934).

Sceranka's application for benefits was denied on June 26, 2014. (Tr. 20). Thereafter, Sceranka filed a written request for a hearing on July 11, 2014. (Id.). At the hearing (held by video), Sceranka, represented by counsel, testified without the testimony of a vocational expert. Christina Sceranka v. Nancy A. Berryhill, 3:17-cv-01532 (Doc. 19, at 9-13). Sceranka appeared in Binghamton, New York, and the ALJ presided over the hearing from Syracuse, New York. (Tr. 20). By a decision dated September 6, 2016, the ALJ denied Sceranka's application for benefits. (Tr. 17). On August 28, 2017, Sceranka appealed the ALJ's decision to this Court. Sceranka, 3:17-cv-01532 (Doc. 1). On August 21, 2018, the Court ruled that the

Commissioner's decision was not supported by substantial evidence and remanded the matter to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. 405(g). Id. (Doc. 19, at 13). In the decision, this Court ruled that Sceranka was correct in her assertion that the ALJ erred at Step 5 of the sequential analysis by failing to consult a vocational expert to determine if a significant number of jobs existed in the national economy for an individual with Sceranka's age, education, work experience, and RFC. Id.

Following this remand a second administrative hearing was conducted on August 2, 2019. (Tr. 719-54). Twenty five days later, on August 27, 2019, the ALJ issued a decision denying Sceranka's application for benefits. (Id.).

In that decision, the ALJ first concluded that Sceranka had not engaged in substantial gainful activity since April 10, 2014, the application date. (Tr. 702). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Sceranka suffered from the following severe impairments: inflammatory arthritis, essential hypertension, high cholesterol, asthma, gout, diabetes mellitus, and obesity. (Id.). At Step 3, the ALJ determined that none of these impairments met or medically equaled the severity of one of the listed impairments. (Tr. 705-06).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC"), which considered all of Sceranka's limitations from her impairments:

After careful consideration of the entire record, I find that the claimant has the [RFC] to perform sedentary work as defined in 20 C.F.R. 416.967(a) except the following: she can occasionally lift, carry, push, or pull 10 pounds; she can frequently lift, carry, push, or pull less than 10 pounds; she can stand or walk, in combination, for 2 hours total in an 8-hour workday with normal breaks; she can sit for 6 hours total in an 8-hour workday with normal breaks; she can occasionally climb ramps, stairs, ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, crouch, or crawl; she should avoid concentrated exposure to extreme heat, extreme cold, humidity, vibration, fumes, odors, dusts, gases, poor ventilation, and workplace hazards; she can perform no more than frequent fine manipulation such as handling, fingering, and feeling bilaterally; she is limited to work that is simple, routine, and involve repetitive tasks in a work environment free of fast paced production requirements, and involving only simple, work-related decisions, with few, if any, work place changes. She requires the use of a cane to ambulate, but can carry small objects such as a file or ledger in her free hand.

(Tr. 706).

The residual functional capacity assessment fashioned by the ALJ rejected the unanimous and recent opinions of both of Sceranka's treating sources, who concluded that her impairments were disabling. The ALJ also discounted limitations found by every physician who had actually seen, examined, or treated Sceranka, choosing instead to place great weight on the only non-examining source, Dr. Maas, who had issued his opinion in June of 2014, shortly after Sceranka filed for disability. The ALJ justified this decision to reject, or discount, every treating and examining source as follows:

As for the opinion evidence, State agency medical consultant Kurt Maas, M.D., opined in June 2014 that the claimant was able to perform work at the light exertional level (Exhibit D1A). The claimant could

10

occasionally perform postural actions. The claimant should avoid concentrated exposure to extreme heat, extreme cold, humidity, vibration, fumes, odors, dusts, gases, poor ventilation, and workplace hazards. The claimant did not have limitations being exposed to wetness or noise. The claimant did not have additional environmental and manipulative limitations. Dr. Maas' opinion is accorded substantial weight. I do not adopt all of the findings in Dr. Maas' opinion, but the opinion is generally supported with the objective medical evidence.

Consultative examiner Justine Magurno, M.D., opined that the claimant had the claimant was able to: sit 4 hours, stand 2 hours, and walk 1 hour total and resting the remaining period of time (Exhibit D5F). Dr. Magurno determined that the claimant had greater environmental limitations/restrictions and could never climb ladders, climb scaffolds, kneel, crouch, or crawl. Dr. Magurno also identified significant limitations in handling, fingering, feeling, pushing, pulling, and operating foot controls. Dr. Magurno's opinion is accorded some weight. Although Dr. Magurno had the opportunity to examine the claimant, it is not consistent with the longitudinal record and the claimant's activities of daily living.

Treating provider Jose Nazar, M.D., opined that the claimant has significant exertional limitations, including the inability to frequently lift and carry any weight, the need to use crutches or cane to ambulate, and the ability to sit, stand or walk, in combination, for no more than 7 hours total in an 8-hour workday. Dr. Nazar determined that the claimant has significant limitations using her hands or feet for reaching, handling, fingering, feeling, pushing, pulling, and operating foot controls. He determined that the claimant could never climb ladders, climb scaffolds, stoop, kneel, crouch, crawl, or work at unprotected heights; and could only occasionally climb stairs, climb ramps, balance, or tolerate exposure to moving mechanical parts, operating a motor vehicle, humidity, wetness, and temperature extremes (Exhibit D12F). In a letter dated August 5, 2016, the claimant's representative argued that Dr. Nazar likely indicated greater limitations, with the ability to stand or walk, in combination, for no more than 2 hours total in an 8-hour workday with use of a cane or crutches (Exhibit D14F).

However, the Administrative Law Judge in the prior decision did not find the representative's arguments persuasive and accords little weight

to Dr. Nazar's medical opinion. Both Drs. Nazar and Magurno indicate that the claimant is unable to sit, stand ,and walk for a full 8-hour workday, but these limitations are not supported by the scant chronically positive clinical findings noted on repeat physical exams, including results of Dr. Nazar's exam. Dr. Nazar opined in December 2016 that the claimant could stand or walk for a total of 4 hours (Exhibit D16F). The claimant could be ambulatory for that amount of time with crutches. The claimant could sit, stand, and walk for 1 hour without interruption. In an 8 hour workday, the claimant could sit for 3 hours, and stand and walk for 2 hours. The claimant would require a cane to ambulate. Dr. Nazar's opinions are accorded little weight for the reasons set out above as reflected in the prior opinion.

Treating provider Warren DeWitt, M.D., opined that the claimant would be off task for more than 33% of the day (Exhibit D15F). The claimant would be absent from work for more than 4 days per month. The claimant would be able to walk for 30 minutes in an 8 hour workday. Dr. DeWitt opined that the claimant's conditions had worsened with the limitations being more severe (Exhibit D18F). Dr. DeWitt's opinions are accorded little weight. They are not supported with objective medical evidence. There is a paucity of medical evidence apparently due to the claimant's lack of medical insurance. The objective evidence that is available in the record does not support this degree of limitations.

(Tr. 709-10).

There were several curious aspects to this analysis. First, it rejected the most recent medical opinions in favor of a temporally remote opinion. Second, it gave little weight to the judgment of two treating sources. Third, it favored the sole opinion of a doctor who never saw Sceranka over the collective opinions of three physicians who either examined or treated the plaintiff. Fourth, it seemed to discount the treating source opinions based on a paucity of treatment records while acknowledging that Sceranka's lack of insurance accounted for her inability to

obtain treatment, a factor which as a legal matter should not be held against a claimant.

Having arrived at this RFC assessment for Sceranka based upon this flawed evaluation of these various medical opinions, the ALJ found at Step 5 that there were other jobs performed at the sedentary exertional level in the national economy which she could perform. (Tr. 711). Accordingly, the ALJ concluded that Sceranka did not meet the stringent standard for disability set by the Act and denied her disability. (Id.).

This appeal followed. (Doc. 1). On appeal, Sceranka argues, *inter alia*, that the ALJ erred by giving the greatest weight to the temporally remote opinion of the only medical source who never actually examined the plaintiff, and further erred by rejecting all treating and examining source opinions without an adequate explanation. This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, we agree that this case should be remanded for further consideration by the Commissioner.

## III.   Discussion

### A.   Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the

record. See 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200

(3d Cir. 2008); Ficca v. Astrue, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

Substantial evidence "does not mean a large or considerable amount of evidence, but

rather such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial

evidence is less than a preponderance of the evidence but more than a mere scintilla.

Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a

conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir.

1993). But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n,

383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

Several fundamental legal propositions flow from this deferential standard of

review. First, when conducting this review "we are mindful that we must not

substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d

607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined

14

to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B.      Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); <u>see also</u> 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts

in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living to fashion an RFC, courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir.

2006); Cummings, 129 F. Supp. 3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

Further, in conducting this assessment "[t]he ALJ must consider all relevant evidence when determining an individual's residual functional capacity." Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001). An ALJ must also "explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000). Therefore:

> Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. See Plummer, 186 F.3d at 429; Cotter, 642 F.2d at 705. "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Cotter, 642 F.2d at 705.

Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000). See Riley

v. Colvin, No. 3:13-CV-1223, 2014 WL 4796602, at *7 (M.D. Pa. Sept. 26, 2014).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating

the existence of a medically determinable impairment that prevents him or her from

engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this

burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show

that jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and

RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive

requisites. Most significant among these legal benchmarks is a requirement that the

ALJ adequately explain the legal and factual basis for this disability determination.

Thus, in order to facilitate review of the decision under the substantial evidence

standard, the ALJ's decision must be accompanied by "a clear and satisfactory

explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d

Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate

which evidence was accepted, which evidence was rejected, and the reasons for

rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his

decision which evidence he has rejected and which he is relying on as the basis for

his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

**C.   Legal Benchmarks for the ALJ's Assessment of Medical Opinion Evidence.**

The Commissioner's regulations also set standards for the evaluation of medical evidence, and define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(c).

In deciding what weight to accord competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions generally entitled to more weight. See 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources . . ."); 20 C.F.R. § 404.1502 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where

21

it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c).

Oftentimes, as in this case, an ALJ must evaluate medical opinions and records tendered by a number of different medical sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when weighing competing medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or

for the wrong reason.' " <u>Morales v. Apfel</u>, 225 F.3d 310, 317 (3d Cir. 2000) (quoting

<u>Mason</u>, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by

an adequate, articulated rationale, it is the province and the duty of the ALJ to choose

which medical opinions and evidence deserve greater weight.

However, case law also cautions courts to take into account the fact that state

agency non-treating and non-examining source opinions are often issued at an early

stage of the administrative process. While this fact, standing alone, does not preclude

consideration of the agency doctor's opinion, <u>see</u> <u>Chandler v. Comm'r of Soc. Sec.</u>,

667 F.3d 356, 361 (3d Cir. 2011), it introduces another level of caution that should

be applied when evaluating reliance upon such opinions to discount treating and

examining source medical statements. Therefore, where a state agency non-treating

and non-examining opinion does not take into account material medical

developments which have occurred after the opinion was rendered, that opinion

often cannot be relied upon by the Commissioner to carry its burden of proof. <u>See</u>

<u>Batdorf v. Colvin</u>, 206 F. Supp. 3d 1012, 1023 (M.D. Pa. 2016).

### D.   <u>A Remand is Appropriate in this Case.</u>

As we have noted, an ALJ's decision must be accompanied by "a clear and

satisfactory explication of the basis on which it rests." <u>Cotter</u>, 642 F.2d at 704.

Furthermore, the ALJ must also "indicate in his decision which evidence he has

rejected and which he is relying on as the basis for his finding." <u>Schaudeck</u>, 181 F.3d

at 433. This cardinal principle applies with particular force to two types of assessment made by ALJs. First, it is well-settled that "[t]he ALJ must consider all relevant evidence when determining an individual's residual functional capacity." Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001). Therefore, an ALJ must "explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000). Second, with respect to an ALJ's assessment of medical opinion evidence, it is clear that "[w]here . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer, 186 F.3d at 429)).

Guided by these legal tenets, we find in this case that a remand is warranted since the ALJ's decision to afford significant weight to the temporally remote, non-treating, non-examining state agency opinion of Dr. Maas without fully considering the context of that opinion and the intervening medical events which took place after that opinion was rendered in June of 2014 has not been adequately justified or supported on the record of these proceedings. Therefore, a remand of this case is necessary to further explain, or develop, this medical record.

On this score, the ALJ's reliance upon the June 26, 2014 state agency opinion of Dr. Maas is particularly problematic for several reasons. First, this judgment ran contrary to the general preferences articulated by regulations and case law that call upon ALJs to give significant weight to treating and examining source opinions, and to only favor an opinion rendered by a non-examining or non-treating source when that opinion draws greater evidentiary support from the medical record.

Second, the decision to afford significant weight to this June 2014 opinion was particularly problematic, since this opinion was issued at the outset of this process and without consideration of subsequent treatment opinions and records for Sceranka, treatment records which appeared to later document the exacerbation of her symptoms and her need for crutches or a cane in order to ambulate. As we have observed, where a non-treating and non-examining opinion does not take into account material medical developments that have occurred after the opinion was rendered, that opinion often cannot be relied upon by the Commissioner to carry its burden of proof. See Batdorf v. Colvin, 206 F. Supp. 3d 1012, 1023 (M.D. Pa. 2016). As a matter of law and common sense, material medical developments that take place after a state agency or consulting expert's review of a claimant's file frequently can undermine the confidence which can be placed in this non-treating and non-examining source opinion. Cadillac v. Barnhart, 84 F. App'x 163, 168 (3d Cir. 2003). In short, it is well-recognized that:

It can be inappropriate for an ALJ to rely on a medical opinion that was issued prior to the close of the period of claimed disability, particularly if a claimant's medical condition changes significantly after the opinion is issued. See, e.g., Alley v. Astrue, 862 F. Supp. 2d 352, 366 (D. Del. 2012); Morris v. Astrue, Civ. Action No. 10–414–LPS–CJB, 2012 WL 769479, at *24 (Mar. 9, 2012). However, when a state agency physician renders an RFC assessment prior to a hearing, the ALJ may rely on the RFC [only] if it is supported by the record as a whole, including evidence that accrued after the assessment. See, e.g., Pollace v. Astrue, Civil Action No. 06–05156, 2008 WL 370590, at *6 (E.D. Pa. Feb. 6, 2008); see also Johnson v. Comm'r of Soc. Sec., Civil No. 11–1268 (JRT/SER), 2012 WL 4328389, at *9 n. 13 (D. Minn. Sept. 20, 2012); Tyree v. Astrue, No. 3:09–1091, 2010 WL 2650315, at *4 (M.D. Tenn. June 28, 2010).

Smith v. Astrue, 961 F. Supp. 2d 620, 644 (D. Del. 2013).

Applying these legal benchmarks, courts have frequently remanded cases for further consideration by the Commissioner when great reliance is placed upon early non-treating or non-examining source opinions, without adequate examination of the degree to which subsequent medical developments and opinions undermined those preliminary state agency expert determinations. See e.g., McArthur v. Berryhill, No. 1:17-CV-2076, 2019 WL 1051200, at *7 (M.D. Pa. Jan. 30, 2019), report and recommendation adopted, No. 1:17-CV-2076, 2019 WL 1040673 (M.D. Pa. Mar. 5, 2019); Foose v. Berryhill, No. 3:17-CV-00099, 2018 WL 1141477, at *9 (M.D. Pa. Mar. 2, 2018).

Here, Dr. Maas' June 26, 2014 opinion simply could not take into account these later, material medical developments, including the two 2016 treating source opinions, both of which alluded to Sceranka's need for a cane or crutches.

Recognizing that "[i]t can be inappropriate for an ALJ to rely on a medical opinion that was issued prior to the close of the period of claimed disability, particularly if a claimant's medical condition changes significantly after the opinion is issued, see, e.g., Alley v. Astrue, 862 F. Supp. 2d 352, 366 (D. Del. 2012); Morris v. Astrue, Civ. Action No. 10–414–LPS–CJB, 2012 WL 769479, at *24 (Mar. 9, 2012)," Smith v. Astrue, 961 F. Supp. 2d 620, 644 (D. Del. 2013), we find that these material intervening medical developments undermine the reliance that can be placed on this preliminary June 2014 opinion and calls for additional consideration of the evidence relating to Sceranka's physical decline and her need for a cane or crutches.

Dr. Maas' June 26, 2014 opinion is also problematic in its dismissive treatment of the more substantial limitations that Dr. Magurno found on June 17, 2014, limitations which were based upon an actual examination of Sceranka conducted some nine days prior to the far less restrictive medical opinion authored by Dr. Maas.  In our view, Dr. Maas' opinion, which simply stated that that he gave this examining source opinion "appropriate weight" (Tr. 77), provides an insufficient basis for rejecting the contemporaneous findings of Dr. Magurno who actually examined the plaintiff.

Further, one rationale for the ALJ's decision to afford this non-examining and temporally remote opinion greater weight than the treating source opinions was the lack of treatment record support for those latter treating source opinions. However,

the ALJ candidly acknowledged that: "There is a paucity of medical evidence apparently due to the claimant's lack of medical insurance." (Tr. 710).

This is not a valid reason for discounting a medical opinion. Quite the contrary, it is well-settled that ALJ's should refrain from making adverse inferences against a claimant based upon the absence of treatment records when it is shown that the claimant was unable to afford treatment and lacked health insurance. Diggs v. Colvin, No. CIV.A. 13-4336, 2015 WL 3477533, at *2 (E.D. Pa. May 29, 2015). Indeed:

> Courts routinely have remanded cases in which the ALJ's credibility analysis fails to address evidence that a claimant declined or failed to pursue more aggressive treatment due to lack of medical insurance. See, e.g., Wilson, 2014 WL 4105288, at 11–12; Kinney v. Comm'r of Soc. Sec., 244 F. App'x 467, 470 (3d Cir.2007); Sincavage v. Barnhart, 171 F. App'x 924, 927 (3d Cir.2006); Henderson v. Astrue, 887 F.Supp.2d 617, 638–39 (W.D.Pa.2012); Plank v. Colvin, Civ. No. 12–4144, 2013 WL 6388486, at *8 (E.D.Pa.2013).

Pettigrew v. Colvin, No. CIV.A. 2:14-42, 2014 WL 4792196, at *3 (W.D. Pa. Sept. 24, 2014). In the instant case, the ALJ did not simply fail to consider Sceranka's lack of health insurance when discounting the treating source opinions. The ALJ affirmatively noted that lack of insurance, but then seemed to cite the paucity of treatment records due to the lack of insurance as grounds for discounting the treating source findings, which consistently concluded that Sceranka was disabled. This error also compels a remand.

Finally, the ALJ's August 27, 2019 decision suggested that that the ALJ felt bound by the prior weighing of the medical opinion evidence conducted at Sceranka's earlier administrative hearing since the ALJ rejected the treating source opinion of Dr. Nazar, stating in part that: "the Administrative Law Judge in the prior decision did not find the representative's arguments persuasive and [therefore] accords little weight to Dr. Nazar's medical opinion." (Tr. 710). To the extent that the ALJ implied that he was bound by this prior determination, we believe that the ALJ was incorrect since on remand, an "ALJ . . . errs if he starts with the premise that he is bound by the prior RFC determination." Peterson v. Comm'r of Soc. Sec., No. 1:18-CV-1184, 2020 WL 1329332, at *4 (W.D. Mich. Mar. 23, 2020).

Taken together, we find that these errors of analysis and articulation call for a remand in this particular case. Yet, while case law calls for a remand and further proceedings by the ALJ in this case, assessing this claim in light of this evidence, nothing in our opinion should be construed as suggesting what the outcome of that final and full analysis should be. Rather, that final assessment of the evidence must await a thorough consideration and development of this evidence on remand by an ALJ. Therefore, nothing in this opinion should be deemed as expressing a view on what the ultimate outcome of any reassessment of this evidence should be. Rather, that task should remain the duty and province of the ALJ on remand.

IV.    **Conclusion**

Accordingly, for the foregoing reasons, IT IS ORDERED that this case be

REMANDED for further consideration of the Plaintiff's application.

An appropriate order follows.


/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge


Submitted this 19th day of August 2020